UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PAOLA CANAS, JESSICA "JESSA" HINTON, LUCY PINDER, MARIANA DAVALOS, SANDRA VALENCIA, AND URSULA MAYES,<br><br>    Plaintiffs,<br><br>    v.<br><br>BRAMA 1 INC. D/B/A ECLIPSE BAR AND GRILL, RUA ENTERPRISES INC. D/B/A ECLIPSE BAR AND GRILL D/B/A ECLIPSE LOUNGE,<br><br>    Defendants. | No. 23-cv-11762-DLC |

**ORDER OF REASSIGNMENT AND REPORT AND RECOMMENDATION ON
PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND DAMAGES**

CABELL, U.S.M.J.

    **I.   Introduction**

    The plaintiffs are professional models who contend that the defendants, operators of a nightclub in Lynn, Massachusetts, used their images without permission to advertise the defendants' business on social media. The complaint asserts federal question jurisdiction under 28 U.S.C. § 1331(a) based on claims for violation of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A) and (B), along with several state statutory and common law claims.

    The court previously entered an order of default against the defendants after they were served with the complaint but failed to

respond. (D. 12). The plaintiffs now move for default judgment and damages in the amount of $132,500, plus costs and attorneys' fees.[1] (D. 18).

Given the opportunity to scrutinize the complaint more closely, the court finds that the plaintiffs are not entitled to judgment or damages. They are not entitled to judgment on their principal Lanham Act claims because the allegations fail, even if true, to show the plaintiffs suffered injuries covered by the Lanham Act, or a real likelihood that consumers might be misled to believe each model actually endorsed the nightclub. For these reasons the complaint fails to plead valid Lanham Act claims and the claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Assuming this conclusion is endorsed, the record does not support exercising discretionary supplemental jurisdiction over the remaining state claims and they therefore also should be dismissed, without prejudice.

Accordingly, the court has set aside the entry of default it previously entered. (D. 19). The court will also order that the case be redrawn to a district judge and recommend upon reassignment that the district judge deny the pending motion for default judgment and thereafter dismiss the complaint.

---

[1] Although the plaintiffs' motion is titled as a motion for "entry of default," it is in fact a motion for default *judgment*, and the court for that reason refers to it that way.

## II. Legal Standard

Under Rule 55(a) of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  After an entry of default, a court may enter a default judgment under Rule 55(b)(2) upon the non-defaulting party's request if "[the] court has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object."  *Auctus Fund, LLC v. ERHC Energy, Inc.*, No. 18-cv-10216-ADB, 2019 WL 1316749, at *2 (D. Mass. Mar. 21, 2019) (citing *In re The Home Rests., Inc.*, 285 F.3d 111, 114 (1st Cir. 2002)).

A motion for default judgment is evaluated under the same standard of review as a motion for dismiss for failure to state a claim.  *See Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1, 2 (1st Cir. 2002).  Thus, the court must examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action.  *Id.*  In doing so, the court "sets aside" the "complaint's legal conclusions in scrutinizing whether the facts that it provides demonstrates [the plaintiff's] entitlement to relief."  *Auctus*

*Fund, LLC v. Sauer Energy, Inc.*, 444 F. Supp. 3d 279, 285 (D. Mass. 2020).

### III. The Complaint

According to the complaint, the defendants operate a nightclub in Lynn known as Eclipse Lounge.[2] (D. 18 at 1, 2). The defendants use social media to promote the nightclub and attract customers. (D. 1 ¶ 43).

The plaintiffs are professional models who earn income through modeling and by licensing their images for commercial advertising purposes. (D. 1 ¶ 18). According to the complaint, the defendants altered and posted the plaintiffs' images on Eclipse's social media accounts in a manner that falsely implied the plaintiffs were affiliated with, employed by, or endorsed the nightclub. (D. 1 ¶ 20). The plaintiffs did not authorize the defendants to alter or use their images and did not receive any compensation. (D. 1 ¶ 49).

The plaintiffs' images were used as follows:

(1) Paola Canas' image (along with another woman's image) was posted on Instagram on November 25, 2019, and January 10, 2022;

---

[2] The court refers to Eclipse Lounge as "Eclipse" or "the nightclub."

(2) Jessica Hinton's image was posted on Instagram on either April 20, 2019, or November 11, 2021;[3]

(3) Lucy Pinder's image was posted on Instagram on December 28, 2019;

(4) Mariana Davalos' image was posted on Instagram on June 20, 2018, and June 24, 2018;

(5) Sandra Valencia's image was posted on Instagram on November 27, 2019; and

(6) Ursula Mayes' image was posted on Instagram on July 14, 2018.

The complaint asserts 12 claims. Counts One and Two assert federal claims for false advertising, 15 U.S.C. § 1125(a)(1)(B), and false association, 15 U.S.C. § 1125(a)(1)(A), respectively, in violation of the Lanham Act. Counts Three through Twelve assert state claims for: common law violation of privacy (Count Three); statutory violation of privacy under M.G.L. c. 214, § 1B (Count Four); unauthorized use of one's likeness in violation of M.G.L. c. 214, § 3A (Count Five); violation of the common law right of publicity (Count Six); unfair trade practices in violation of M.G.L. c. 93A, § 11 (Count Seven); defamation (Count Eight); negligence and *respondeat superior* (Count Nine); conversion (Count

---

[3] The complaint refers the court to exhibit B but that exhibit displays screenshots of two different Instagram posts, each depicting the image of a different woman.

5

Ten)); unjust enrichment (Count Eleven); and quantum meruit (Count Twelve).  (D. 1 ¶¶ 86-187).

**IV.  Discussion**

<u>The Federal Lanham Act Claims</u>

As noted above, a plaintiff seeking entry of a default judgment must show that (1) the court has jurisdiction over the claims at issue; (2) the claims assert a cognizable claim for relief; and (3) there has been fair notice to the defaulted party of its opportunity to object.  *See, e.g., Auctus Fund*, 2019 WL 1316749, at *2.  The court presumes that the first and third criteria are satisfied here where the plaintiffs assert federal claims and the docket reflects the defendants were served.  (D. 9).  The court thus focuses on whether the plaintiffs assert cognizable claims, starting with the two federal Lanham Act claims.

Section 1125(a) of the Lanham Act provides two distinct bases for liability: false advertising under § 1125(a)(1)(B) (Count One), and false association under § 1125(a)(1)(A) (Count Two).  Regarding Count One's claim for false advertising, the plaintiffs must show that:

> the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about [its] own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4)

6

> the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310-11 (1st Cir. 2002).

The Supreme Court has indicated that a threshold matter to address with respect to a § 1125(a) false advertising claim is whether the plaintiff falls within the Lanham Act's "zone of interests," that is, whether the harm the plaintiff has reportedly suffered is the type of harm the law is intended to protect against. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-31 (2014) ("First, we presume that a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked.") (internal quotation omitted).

For purposes of a false advertising claim under § 1125(a)(1)(B), this means that "a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131-32. The plaintiff also must show proximate cause, that is, they must show that the economic or reputational injury they suffered "flow[s] directly from the deception wrought by the defendant's advertising," which occurs when the deception causes consumers "to

7

withhold trade from the plaintiff." *Id.* at 133. As such, it is not enough for a plaintiff to merely allege that a defendant's use of their likeness caused the plaintiff to lose out on revenue they might have earned had the defendant properly licensed the image. *See id.* at 133; *Ratchford v. Orange Lantern, Inc.*, 720 F. Supp. 3d 64, 77-78 (D. Mass. 2024) (finding that a defendants' failure to pay licensing fees is not the type of injury covered under the Lanham Act).

That is where Count One's false advertising claim fails. Even assuming the defendants used the plaintiffs' likenesses without permission to advertise their business, the complaint fails to allege facts to show or even suggest that any plaintiff suffered a loss in future bookings or an injury to their reputation because of the defendants' use of their image. *See e.g., Lexmark*, 572 U.S. at 133 ("[R]eputational injury . . . occurs when [consumer deception] causes [consumers] to withhold trade from the plaintiff."); *Meenaxi Enters., Inc. v. Coca-Cola Co.*, 38 F.4th 1067, 1077 (Fed. Cir. 2022) (No actionable injury where defendant's misrepresentation did not result in loss of sales).

To be sure, the complaint alleges that the defendants' use of their images (1) deprived each plaintiff of the revenue she would have received had Eclipse paid to use their image, and (2) falsely implied each plaintiff was associated in some way with the

8

nightclub. (D. 1 ¶¶ 57-59). As noted above, though, these claimed injuries were merely the incidental byproduct of the defendants' unauthorized use of the plaintiffs' images and fall short of constituting the type of economic or reputational harm a plaintiff must suffer to assert a valid Lanham Act false advertising claim. *See Ratchford*, 720 F. Supp. 3d at 64, 77-78.

Notably, another court in this district has found—in a case brought by many of the same plaintiffs, in an effectively identical factual context—that the plaintiffs failed to assert a valid Lanham Act false advertising claim where the facts failed to show the unauthorized use of their images adversely affected their careers. *See Ratchford,* 720 F. Supp. 3d at 77-78 (denying plaintiffs' motion for summary judgment because "none of the plaintiffs could provide any evidence of even the slightest actual impact [the social media] postings had on their careers").

The Second Circuit has also concluded similarly in considering a practically indistinguishable case involving many of the same models as in this case. *See Souza v. Exotic Island Enterprises, Inc.*, 68 F.4th 99 (2nd Cir. 2023). In *Souza*, the district court granted summary judgment in the defendant's favor on the plaintiffs' false advertising claim and the court of appeals affirmed on the ground that the plaintiffs could not show that

9

they suffered any injury "flowing from the deception wrought by the defendant's advertising." *Id.* at 118-20.

Accordingly, even assuming the plaintiffs lost out on revenue they would have received had the defendants paid to use their images, and/or were falsely linked to an establishment with whom they in fact had no personal or professional association, they fail to assert a valid Lanham Act false advertising claim because they have not alleged or shown that the use of their images adversely impacted their career or reputation. Count One therefore fails to plead a valid claim. *See Ratchford,* 720 F. Supp. 3d at 77-78; *Souza*, 68 F.4th at 118-20.

Regarding Count Two's false association claim under § 1125(a)(1)(A), a plaintiff seeking relief must allege and show that the defendant's use of their image was likely to cause consumer confusion: that is, it was likely to "deceive the public into believing that they endorsed, sponsored, or approved of the defendant's product." *Greenberg v. PATHS Program Holding, LLC (AZ)*, No. 3:19-cv-30032-MGM, 2024 WL 4012010, at *15 (D. Mass. July 2, 2024) (quoting *Advanced Res. Int'l, Inc. v. Tri-Star Petroleum Co.*, 4 F.3d 327, 334 (4th Cir. 1993)); *Gronk Nation, LLC v. Sully's Tees, LLC*, 37 F. Supp. 3d 495, 498 (D. Mass. 2014).

Count Two faces a conceptual hurdle from the start because Lanham Act false association claims "mostly relate to the

10

possibility of consumers mistaking one party's good, service, or trademark with another." *Am. Bd. of Internal Med. v. Salas Rushford*, 114 F.4th 42, 64 (1st Cir. 2024). That concern is of course not present here where the claim relates to the use of a model's image on social media rather than the use of similar looking products or brands. That said, a plaintiff may make out a false association claim based on the unauthorized use of their image or likeness, but these claims are typically called "false sponsorship" or "false endorsement" claims, and recovery is typically limited to celebrity plaintiffs. *Ji v. Bose Corp.*, 538 F. Supp. 2d 349, 351 (D. Mass. 2008) (false sponsorship and false endorsement claims are "traditionally limited to celebrity plaintiffs"); *see also Electra v. 59 Murray Ents., Inc.*, 987 F.3d 233, 258 (2d. Cir. 2021) ("The misappropriation of a completely anonymous face could not form the basis for a false endorsement claim, because consumers would not infer that an unknown model was 'endorsing' a product, as opposed to lending her image to a company for a fee."); *ETW Corp. v. Jireh Pub., Inc.*; 332 F.3d 915, 925-26 (6th Cir. 2003) ("False endorsement occurs when a celebrity's identity is connected with a product or service in such a way that consumers are likely to be misled about the celebrity's sponsorship or approval of the product or service."); *White v. Samsung Elecs. Am., Inc.*, 971 F.3d 1395, 1400 (9th Cir. 1992) ("If [the plaintiff]

11

is unknown to the segment of the public at whom [the defendant's] ad was directed, then that segment could not be confused as to whether she was endorsing [the product]."). Notably, the reason these cases typically are limited to celebrities or well-known figures is because the "good" to be protected "is not a particular product but instead the celebrity's persona and goodwill." *Gronk Nation,* 37 F. Supp. 3d at 498.

This precedent may not legally foreclose the plaintiffs' ability to bring a false association claim, but it surely undermines it where the complaint fails to plead facts that would suggest any plaintiff was so well known and recognizable that her image alone might misleadingly be taken as a celebrity endorsement of the defendants' nightclub. *See Ji*, 538 F. Supp. 2d at 351 (the plaintiff can prevail "only if [she] can prove that [the defendant's] target audience was familiar with her personally".).

While there appears to be no binding case law in this circuit addressing how to assess the viability of a celebrity false endorsement claim, the Second Circuit has, consistent with the precedent cited above, endorsed an approach that focuses on first assessing the plaintiffs' recognizability, followed by a consideration of the likelihood of actual consumer confusion from the use of their persona, along with any evidence that the defendants' actions were taken in bad faith. *See Souza*, 68 F.4th

12

at 110-15; *Electra*, 987 F.3d at 258. The court finds that approach reasonable and instructive and chooses to apply it here.

Regarding the first factor, the complaint does assert in conclusory fashion that the plaintiffs are all "well-known" models, but it supports this assertion by claiming that each had made media appearances in the past and enjoys a strong following on social media. Even taken as true, however, these facts mistakenly conflate a model's degree of professional success with the level of her actual public recognizability. They may speak to whether the model is gainfully employed but they do not speak to whether consumers actually recognize her as a distinct personality. *See Toth v. 59 Murray Enters., Inc.*, No. 15 CIV. 8028 (NRB), 2019 WL 95564, at *7 (S.D.N.Y. Jan. 3, 2019), *aff'd sub nom. Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233 (2d Cir. 2021) ("[W]hile these other plaintiffs have participated in promotional campaigns for a wide variety of brands and appeared in magazines, TV shows, and movies, their resumes are devoid of evidence that they actually garnered recognition for any of their appearances."). A consideration of this factor thus does not favor the plaintiffs.

Next, the plaintiffs allege "upon information and belief" that the images caused actual confusion, but this conclusory assertion is also unavailing because "a plaintiff's obligation to

13

provide the grounds of his entitlement to relief requires more than labels and conclusions." *Ruiz Rivera v. Pfizer Pharms., LLC.*, 521 F.3d 76, 84 (1st Cir. 2008) (internal citation omitted). The complaint lacks well-pled facts showing that any confusion actually occurred, or that any plaintiff is recognizable and known to consumers. Compounding this, the social media postings themselves do not tag the plaintiffs' social media handles or mention them by name. Without concrete examples to corroborate the plaintiffs' "information and belief," the court finds that this factor also does not favor the plaintiffs. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation[.]") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Lastly, the complaint alleges the defendants "intentionally altered" the images to make it appear as though the models endorsed or worked as entertainers at Eclipse with the goal of attracting clientele. The complaint also claims that the defendants did this with the intent of causing irreparable harm to the plaintiffs by permanently depriving them of the right to use their images. (D. 1 at 13). This assertion, also conclusory in nature, fails to

14

support the plaintiffs' claim because it is difficult, if not impossible, to envision how the defendants' misappropriation of the plaintiff's likenesses could somehow permanently deprive any plaintiff of their right to use their image going forward, or evinces an intent to cause any plaintiff irreparable harm. In the absence of specific facts bridging this logical gap, the court finds the assertion to be without force.

In sum, the pled facts, when viewed through a prism of common sense, suggest at best that the defendants used the plaintiffs' images to promote their nightclub as a venue frequented by attractive women. Whatever cause of action these facts may support, a Lanham Act claim is not one of them. The pled facts fail for Count One purposes to show that the defendants' use of their images caused any plaintiff to suffer harm to their career or reputation and fail for Count Two purposes to show that the use of their image was likely to mislead any prospective patron into believing that the plaintiff was a well-known personality who endorsed the club. Both counts therefore merit dismissal for failure to state a valid Lanham Act claim. *See Ahmed v. Hosting.com*, 28 F. Supp. 82, 91 (D. Mass. 2014) ("Without pleading facts that assert his claims fall within the zone of interest[,] . . . [Plaintiff's] claims fail to establish standing under the *Lexmark* test."); *Silva v. Burts Bees*, No. CIV. 01-53-B-

C, 2001 WL 1349364, at *8 (D. Me. Oct. 30, 2001) ("[P]laintiff must show likelihood of confusion to maintain a false association claim under the Lanham Act."). Consequently, the plaintiffs are also not entitled to judgment or damages. *See Rivera-Marcano v. Normeat Royal Dane Quality*, 998 F.2d 34, 37 (1st Cir. 1993) (failure to prove any element bars recovery); *BASF Corp. v. Brian's Auto Body, Inc.*, No. 4:18-cv-40183-DHH, 2019 WL 13234373, at *2 (D. Mass. Dec. 9, 2019) (default judgment is only available when a plaintiff states a legally valid claim for relief).

<u>The Remaining State Law Claims</u>

Assuming Counts One and Two are dismissed, the court would need to exercise its discretionary supplemental jurisdiction to adjudicate the remaining state law claims. *See* 28 U.S.C. § 1367 ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it had original jurisdiction[.]"). Given that the case has remained in its infancy and not progressed past the pleading stage, this court believes it would be most appropriate to decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss those claims without prejudice. 28 U.S.C. § 1367(c)(3); *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the

early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well); *See Drake v. Sometimes Spouse, LLC*, 784 Fed. Appx. 602, 605 (10th Cir. 2019) (affirming district court's denial of motion for default judgment where federal claim was dismissed and court refused to exercise supplemental jurisdiction over remaining state law claims); *Arizona Bd. of Regents v. Doe*, 555 F. Supp. 3d 805, 820 (D. Ariz. 2021) (same).

V.     Conclusion and Recommendation

In light of the foregoing, the court **ORDERS** that this case be redrawn for assignment to a district judge. Upon reassignment, the court **RECOMMENDS** that Plaintiffs' Motion for Entry of Default Against Defendants Brama 1 Inc. and Rua Enterprises, Inc. (D. 18) be **DENIED**. The court further **RECOMMENDS** that the complaint be **DISMISSED**. Specifically, the court should dismiss Counts One and Two for failure to state a valid claim and decline to exercise supplemental jurisdiction over Counts Three through Twelve, and consequently dismiss those claims without prejudice.[4]

                                             /s/ Donald L. Cabell
                                             DONALD L. CABELL, U.S.M.J.

DATED:  August 12, 2025

---

[4] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for the First Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See *Keating v. Sec'y of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982).