United States District Court
District of Massachusetts

Canas, et al.,                    )
                                  )
          Plaintiff,              )
                                  )
          v.                      )     Civil Action No.
                                  )     23-11762-NMG
Brama 1 Inc., et al.,             )
                                  )
          Defendant.              )
                                  )
                                  )

MEMORANDUM & ORDER

GORTON, J.

The Court is in receipt of the Report and Recommendation ("R&R") of Magistrate Judge Donald Cabell (Docket No. 20) and subsequent objections of plaintiffs thereto with respect to plaintiffs' motion for default judgment (Docket No. 18). For the following reasons, the Court will accept, in part, and reject, in part, the R&R and enter default judgment in favor of plaintiffs.

I.   **Background**

Plaintiffs Paola Canas, Jessica Hinton, Lucy Pinder, Marianna Davalos, Sandra Valencia and Ursula Mayes (collectively, "plaintiffs") are professional models who have brought suit against Brama I Inc. and RUA Enterprises, doing business as "Eclipse Bar & Grill" and "Eclipse Lounge,"

-1-

(collectively, "defendants").  Defendants operate a night club in Lynn, Massachusetts, and have allegedly used plaintiffs' images without permission to advertise the nightclub on social media.  Plaintiffs have asserted violations of the Lanham Act and have brought state statutory and common law claims.[1]

 After the complaint was filed in August, 2023, the case was referred to Magistrate Judge Donald Cabell who, upon Defendants' persistent failure to appear, carefully considered plaintiffs' motion for default judgment.

The Magistrate Judge recommends that this Court deny plaintiff's motion for default judgment and dismiss the case. The R&R concludes that plaintiffs have no viable federal claims under the Lanham Act and that, as a result, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

Plaintiffs had brought two separate claims under the Lanham Act: a claim for "false advertising" (Count I) and a claim for "false association" (Count II).  They have now filed an objection to the recommendation of the Magistrate Judge as to

---

[1] This case is one of several brought by plaintiffs in this and other federal district courts across the country, accusing various nightclubs of the same substantive conduct, i.e., using images of their likenesses in social media advertisements without authorization.  See, e.g., Cerny v. Costa Verde Corp., No. 21-cv-10927-ADB (D. Mass. 2021); Ratchford v. Orange Lantern, Inc., No. 19-30092-MGM (D. Mass. 2019); Davalos v. Bay Watch, Inc., No. 21-cv-11075-NMG (D. Mass. 2021); Canas v. Dartmouth Clubs, Inc., No. 21-cv-11097-WGY (D. Mass. 2021); Moreland v. Black Budda Assocs., LLC, No. 19-cv-30091-MGM (D. Mass. 2019).

-2-

Count II but do not challenge the recommendation to dismiss Count I.

## II.  **Legal Standard**

When a district court refers a dispositive motion (or petition) to a magistrate judge for recommended disposition, it must determine de novo any part of the magistrate judge's disposition to which an objection has been properly registered. Fed.R.Civ.P. 72(b)(3).

Under Fed.R.Civ.P. 55(a)-(b), a district court may enter default judgment when a defendant has failed to answer or otherwise defend against a complaint.  A final entry of default judgment requires a two-step process.  First, the clerk enters a notice of default. Id. 55(a).  Then, the Court may enter default judgment on the application of a party. Id. 55(b).

Once a notice of default judgment is entered under Rule 55(a), the Court must assume that all well-pled factual allegations in the complaint are true. See Sec. & Exch. Comm'n v. Tropikgadget FZE, 146 F. Supp. 3d 270, 275 (D. Mass. 2015). Nevertheless, default judgment is unwarranted unless 1) the Court has both personal and subject matter jurisdiction, 2) the allegations in the complaint state a cognizable claim for relief and 3) those allegations merit a discernable award of damages. Groden v. Epstein, No. 24-CV-10303-ADB, 2024 WL 4519724, at *1

(D. Mass. Oct. 17, 2024) (citing <u>Ramos-Falcon</u> v. <u>Autoridad de Energia Electrica</u>, 301 F.3d 1, 2 (1st Cir. 2002)).

Unlike the analysis for liability, courts do not accept the vaiidity of factual allegations related to damages. <u>See</u> <u>Au Bon Pain Corp.</u> v. <u>Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981). "The court must ensure that the damages awarded are reasonable and demonstrated by the evidence." <u>Control Point Assocs.</u> v. <u>Santosuosso</u>, No. 21-cv-11699-IT, 2022 WL 1175008, at *2 (D. Mass. Apr. 20, 2022). Allowing a motion for default judgment "does not expose a defendant to impositions not properly identified before the entry of default." <u>Hooper-Haas</u> v. <u>Ziegler Holdings, LLC</u>, 690 F.3d, 40 (1st Cir. 2012). Therefore, the amount of damages awarded by the court "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## III. **Application**

### A. **Count II: Lanham Act (False Association)**

Section 43(a) of the Lanham Act provides, in relevant part, that

> [a]ny person who shall . . . use, in connection with any goods or services . . . any false description or representation . . . shall be liable in a civil action . . . by any person who believes that he is or is likely to be damaged by the use of any such false description or designation.

15 U.S.C. §1125(a)(1)(A).  A claim for "false endorsement" or
"false association" under the Lanham Act is based on the
unauthorized use of one's identity.  Such a claim

> alleges the misuse of a trademark, i.e., a
> symbol or device such as a visual
> likeness . . . which is likely to confuse
> consumers as to the plaintiff's sponsorship or
> approval of the product.

Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1110 (9th Cir. 1992).

The R&R concludes that, as a preliminary matter, plaintiffs
face an uphill battle because false endorsement claims are
"traditionally limited to celebrity plaintiffs." (quoting Ji v.
Bose Corp., 538 F. Supp. 2d 349, 351 (D. Mass. 2008).  But
universal celebrity is not a prerequisite. Bondar v. LASplash
Cosmetics, 2012 WL 6150859, at *7 (S.D.N.Y. Dec. 11, 2012)
(holding that false association claims "do[] not require
celebrity, only a likelihood of consumer confusion").

As a district judge in the Southern District of New York
recently noted, "[s]ome plaintiffs have prevailed even when they
are not 'celebrities' in the traditional sense." Lehrman v.
Lovo, Inc., 2025 WL 1902547, at *8-9 (S.D.N.Y. July 10, 2025)
(plaintiffs alleged they were "well-known and sought-after voice
actors whose voices are their recognizable calling cards"); see,
e.g., Albert Furst von Thurn und Taxis v. Karl Prince von Thurn
und Taxis, No. 04-CV-6107, 2006 WL 2289847, at *3, 11 (S.D.N.Y.
Aug. 8, 2006) (plaintiffs were a European royal family whose

-5-

"distant cousin" was using their name to promote his business activities); Hara v. Netflix, Inc., 146 F.4th 872, 874 (9th Cir. 2025) (plaintiff performed as a drag queen who was "well known [for] . . . regularly host[ing] drag events in West Hollywood . . . [and] appear[ing] in theater productions, reality television shows, films, and music videos").  In short, there is a wide spectrum of fame between an "anonymous face," Electra v. 59 Murray Ents., Inc., 987 F.3d 233, 258 (2d Cir. 2021), and a universally recognized celebrity that may well provide the basis for an actionable Lanham Act claim.

The Magistrate Judge acknowledges that plaintiffs' lack of traditional celebrity may not entirely foreclose their claims but concludes, nevertheless, that their claim of recognition (and therefore consumer confusion) is undermined because

> the complaint fails to plead facts that would suggest any plaintiff was so well known and recognizable that her image alone might misleadingly be taken as a celebrity endorsement of the defendant's nightclub.

With no controlling precedent on the issue from the First Circuit Court of Appeals ("the First Circuit"), the R&R adopts the two-step test used in the Second Circuit Court of Appeals to assess whether the use of a plaintiff's image is "likely to cause confusion".  There, courts look first to plaintiff's "recognizability," then consider "the likelihood of [actual] consumer confusion" and whether defendant's actions were taken

-6-

in bad faith.  <u>See</u> <u>Electra</u>, 987 F.3d at 258.  This Court does not reject the adoption of such a test in the absence of First Circuit precedent but disagrees with the Magistrate Judge as to the application of that test to the facts alleged in the complaint.

As to the first factor, plaintiffs pled that they are well-known models, naming specific magazines and shows in which they have been featured and counting social media followers at least in the hundreds of thousands.  The R&R finds their claims of renown to be conclusory and rejects the recitation of their resumes and social media followings as failing to "speak to whether consumers actually recognize [any of them] as a distinct personality."

With respect to the second factor, the R&R also discounts as too conclusory to withstand scrutiny plaintiffs' allegations, made upon information and belief, that the images caused actual confusion.

This Court, again, respectfully disagrees.  Such a conclusion appears to apply the summary judgment standard to what must be treated as a motion to dismiss.  The R&R faults plaintiffs for failing to present "proof" of their claims of recognizability and likelihood of confusion when, at this stage in the litigation, their only obligation is to <u>plead</u> facts sufficient to support their claims.

Bondar is directly on point here. 2012 WL 6150859.  Similar to plaintiffs in this case, Bondar alleged that

> she is [a] "well known" fashion model, who
> has appeared on catwalks for prestigious
> designer and been featured in a number of
> popular fashion magazines.

Id. at *7.  The court concluded that, although it was "unlikely that the public at large is familiar with her," it was plausible that further discovery would show that "her mark is strong enough to cause a likelihood of consumer confusion."  Id.  As such, the pleadings of false endorsement were sufficient to survive a motion to dismiss.

The same is true here.  Although plaintiffs may not be universally recognized celebrities, they have certainly pled facts sufficient to establish that they are well-known enough that use of their likeness has a likelihood of causing confusion.  Without discovery, they may not be able to prove actual confusion but they have adequately pled it upon information and belief.

Furthermore, this session concluded in Ji v. Bose Corp. that one factor to consider when assessing recognizability is whether the plaintiff's "target audience was familiar with her personally." 538 F. Supp. 2d at 351.  The complaint pleads facts sufficient to satisfy that factor as well.  Many of the plaintiffs have been featured in adult magazines or in lingerie

advertisements.  It is not unreasonable to expect that patrons of adult nightclubs such as Eclipse might recognize these particular plaintiffs.

In addition to recognizability, plaintiffs are required to allege "an injury to a commercial interest in reputation or sales" caused by Eclipse's use of their likenesses and that they "actually suffered [] reputational injuries," such as an impact on their careers. Ratchford v. Orange Lantern, Inc., 720 F. Supp. 3d 64, 78 (D. Mass. 2024).

Plaintiffs have done so here.  They have alleged that the defendant's misrepresentations create the implication that they are adult entertainers, endorse the defendants' night club, or are otherwise affiliated with it.  They also allege that those misrepresentations make it less likely that a company or brand will hire them.  Accepting those well-pled allegations as true, plaintiffs have alleged that they will suffer actual reputational injuries.

Because the Court will allow plaintiffs' motion for default judgment on Count II, it will also assess the merits of the state law claims before turning to the question of damages.

### B. State Law Claims

#### 1.    Count III: Common Law Right of Privacy

Plaintiffs allege a violation of their common law right of privacy.  Massachusetts courts have never recognized invasion of

-9-

privacy as a common law cause of action.  Spencer v. Roche, 659
F.3d 142, 150 n.6 (1st Cir. 2011) (citing Alberts v. Devine, 395
Mass. 59, 69-70 (1985)).

Accordingly, the Court will deny the motion for default
judgment as to Count III.

### 2.   Count IV: M.G.L.c. 214, §1B (Right of Privacy)

M.G.L.c. 214, §1B provides, in relevant part, that a person
"shall have a right against unreasonable, substantial, or
serious interference with his privacy."  The statute has been
interpreted as protecting against the revelation of someone's
private information. Albright v. Morton, 321 F. Supp. 2d 130,
140 (D. Mass. 2004).

Plaintiffs identify no personal, private information that
defendants revealed.  Defendants utilized photographs of
plaintiffs that were publicly available over the Internet and
through their social media accounts, which plaintiffs chose to
make public.  Section 1B does not provide a remedy for false
light invasion of privacy or appropriation.  Ratchford v. Orange
Lantern, Inc., 720 F. Supp. 3d 64, 79 (D. Mass. 2024).

As such, the Court will deny the motion for default
judgment as to Count IV.

### 3. Count V: M.G.L.c. 214, §3A (Unauthorized Use of Individual's Name, Portrait or Picture)

M.G.L.c. 214, §3A protects against misappropriation, i.e., where a plaintiff's

> name, portrait or picture is used within the commonwealth for advertising purposes or for the purposes of trade without [her] written consent.

See also Peckham v. New Engl. Newspapers, Inc., 865 F. Supp. 2d 127, 130 (D. Mass. 2012).  There is no misappropriation, however, where an individual's picture is published

> for purposes other than taking advantage of [her] reputation, prestige, or other value associated with [her], for purposes of publicity.

Jodoin v. Baystate Health Sys., Inc., No. 08-40037-TSH, 2010 WL 1257985, at *27 (D. Mass. Mar. 29, 2010) (quoting Tropeano v. Atl. Monthly Co., 400 N.E.2d 847, 850 (Mass. 1980)); Albright, 321 F. Supp. 2d at 139-140.

This circuit has found that the protection under §3A may be invoked only by those domiciled in Massachusetts. See Bi-Rite Enters., Inc. v. Bruce Miner Co., 757 F.2d 440, 444 (1st Cir. 1985) (finding that a Massachusetts court should not apply M.G.L.c. 214, §3A to plaintiffs not domiciled in Massachusetts); Ratchford, 720 F. Supp. 3d at 79 (same).  Because none of the plaintiffs in this action is domiciled in Massachusetts, the Court will deny the motions for default judgment as to Count V.

### 4.    Count VI: Common Law Right of Publicity

Plaintiffs claim a violation of their common law right of publicity.  Massachusetts courts do not, however, recognize the common law tort of misappropriation of the right to publicity. Ruggers, Inc. v. U.S., 736 F. Supp. 2d 336, 342 (D. Mass. 2010). Protection against the appropriation of one's name and likeness is instead found at M.G.L.c. 214, §3A. Id.

As such, the Court will deny the motion for default judgment as to Count VI.

### 5.    Count VII: M.G.L. c.93A, §11: Unfair Trade Practices

To prevail on a Chapter 93A claim, a plaintiff must demonstrate

> 1) a deceptive act or practice on the part of the defendant, 2) an injury or loss suffered by the plaintiff and 3) a causal connection between the defendant's deceptive act or practice and the plaintiff's injury.

Gorbey ex rel. Maddox v. Am. J. of Obstetrics and Gynecology, 849 F. Supp. 2d 162, 165 (D. Mass. 2012) (citing Hershenow v. Enter. Rent-A-Car Co., 840 N.E.2d 526, 532 (Mass. 2006)). Although the deceptive nature of particular acts is typically a question of fact, the boundaries of what qualifies for consideration as a Chapter 93A violation is a question of law. Milliken & Co. v. Duro Textiles, LLC, 887 N.E.2d 244, 259 (Mass. 2008).  Conduct is deceptive for Chapter 93A purposes if it is

reasonable to find that the conduct could cause a person to act differently from the way he or she would otherwise have acted. Aspinall v. Phillip Morris Cos., 813 N.E.2d 476, 484 (Mass. 2004).

To begin with, conduct is considered unfair if it "attain[s] a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Levings v. Forbes & Wallace, Inc., 396 N.E.2d 498, 504 (Mass. App. Ct. 1979) (Kass, J.); see also Monotype Imaging Inc. v. Deluxe Corp., 883 F. Supp. 2d 317, 322 (D. Mass. 2012) (finding that unfair conduct must "have an extortionate quality that gives it the rancid flavor of unfairness," or fall within some common-law, statutory or otherwise established concept of unfairness or "rises to the level of immoral, unethical, oppressive or unscrupulous.").

In Ratchford, the court found in favor of defendant nightclubs because there was no evidence that the models had suffered a "loss of money or property" due to the use of their images. Ratchford, 720 F. Supp. 3d at 78-79.

In the instant complaint, by contrast, plaintiffs successfully allege actual damages, in that they were "deprived those monies defendants should have paid them for their appearance in" the social media posts. See Cerny v. Costa Verde Corp., No. 21-CV-10927-ADB, 2022 WL 3566818, at *3 (D. Mass.

-13-

Aug. 18, 2022) (finding such allegations sufficient to award default judgment in identical case against another nightclub-defendant).  Accordingly, the court will allow plaintiffs' motion for default judgment with respect to count VII.

### 6.    Count VIII: Defamation

To prove a defamation claim in Massachusetts, a plaintiff must establish that: 1) a defendant made a statement concerning the plaintiff to a third party; 2) the statement could damage the plaintiff's reputation in the community; 3) the defendant was at fault for making the statement; and 4) the statement caused economic loss. See Scholz v. Delp, 41 N.E.3d 38, 45 (Mass. 2015).  If, however, the allegedly defamatory statement may prejudice the plaintiff's profession or business, the plaintiff is not required to prove economic loss and "may recover noneconomic losses, including emotional injury and damage to reputation." Ravnikar v. Bogojavlensky, 782 N.E.2d 508, 511 (Mass. 2003).

Whether a communication is susceptible to a defamatory meaning is a question of law for the court. Phelan v. May Dept. Stores Co., 819 N.E.2d 550, 554 (Mass. 2004).  A communication is deemed susceptible to defamatory meaning if

> it would tend to injure the plaintiff's
> reputation, or hold the plaintiff up to scorn,
> hatred, ridicule or contempt, in the minds of
> any considerable and respectable segment in
> the community.

-14-

Damon v. Moore, 520 F.3d 98, 103 (1st Cir. 2008); (citing

Phelan, 819 N.E.2d. at 553).

The Court finds that plaintiffs have pled facts sufficient

to assert a claim that the social media posts were susceptible

to a defamatory meaning. Accordingly, the Court will allow

plaintiffs' motion for default judgment with respect to Count

VII.

### 7.    Count IX: Negligence and Respondeat Superior

To establish a negligence claim, a plaintiff must

demonstrate

> the defendant owed the plaintiff a duty of
> reasonable care, that the defendant breached
> this duty, that damage resulted, and that
> there was a causal relation between the breach
> of the duty and the damage.

Jupin v. Kask, 849 N.E.2d 829, 834 (Mass. 2006). Whether or not

there was a duty is a question of law and is determined with

reference to existing social values and customs and appropriate

social policy. Cremins v. Clancy, 612 N.E.2d 1183, 1185 (Mass.

1993).

Plaintiffs in this case appear to plead negligence under

theories of negligent supervision and hiring. With respect to

such claims, plaintiffs may show a duty of care on behalf of the

employer if its employees have contact with members of the

public in the course of conducting the employer's business. Roe

-15-

No. 1 v. <u>Children's Hosp. Med. Ctr.</u>, 16 N.E.3d 1044, 1048 (Mass. 2014).

Plaintiffs have not pled facts sufficient to establish a duty of care in this case. Rather, the complaint makes unsubstantiated assertions that such a duty existed. Those assertions are mere legal conclusions that this court is not bound to accept as true. Because plaintiffs are unable to establish a claim for negligence, their respondeat superior claim fails as well. This court will therefore deny the motion for default judgment with respect to count IX.

### 8.    Count X: Conversion

To succeed on a claim for conversion plaintiffs must first show that the defendants intentionally and wrongfully exercised control or dominion over personal property. <u>Walgreen Co.</u> v. <u>Haseotes</u>, 778 F. Supp. 3d 264, 295 (D. Mass. 2025) (citing <u>U.S</u> v. Peabody Const. Co., Inc., 392 F.Supp.2d 36, 37 (D. Mass. 2005). Courts interpreting Massachusetts conversion law routinely interpret personal property to exclude intangible property. See <u>Blake</u> v. <u>Pro. Coin Grading Serv.</u>, 898 F. Supp. 2d 365, 386 (D. Mass. 2012) ("At common law, a conversion claim is viable only in cases involving tangible chattels").

Name and likeness, if property at all, are intangible. Therefore, the Court will deny plaintiffs' motion for default judgment with respect to Count X.

-16-

### 9. Count XI: Unjust Enrichment and Count XII: Quantum Meruit

Apparently, plaintiffs include Counts XI and XII as a means of reasserting their Lanham Act and state law statutory claims as equitable claims.  Equitable remedies are unavailable where the claiming party has an adequate remedy at law.  <u>Barnia</u> v. <u>Kaur</u>, 646 F. Supp. 3d 154, 168 (D. Mass. 2022).  Because plaintiffs' claims are fully remediable under Counts II, VII and VIII, the Court will deny the motion for default judgment with respect to Counts XI and XII.

### C. Damages

### 1. Actual Damages

Support for plaintiffs' claims for damages come from the declaration submitted by Stephen Chamberlain.  He has 30 years of experience in the modeling industry, and bases his declaration on his experience quoting, negotiating and overseeing rates for high-end models.  In coming to his conclusion, Chamberlain relied on

> (a) the Complaint filed in this action along with all exhibits, including the photographic images of the Models used by Defendants, the product advertised, the usages, any alterations to the images, the media used, and the mode and scope of distribution in various markets; (b) each Model's earning history, development, growth, positioning, experience, current exposure, name recognition, personal publicity, social media profile, market demand, complimentary employment, and other factors determining and effecting earning

> capacity; and (c) the type and the caliber of
> clients that have traditionally employed each
> Model.

Dkt. No 18-1 ¶ 7.

Chamberlain calculates damages based on the fair market value of each model's image, which is dependent upon the model's "day rate" and the defendants' "usages" of the images. The day rate is the "base rate of compensation . . . for the Model's time on the day of shoot," and is based on factors such as the models' desirability, work history, social media following, press coverage, personal relationships and television appearances. Id. ¶¶ 19-21. "Usages" are different ways in which the defendant used the models' images, including advertising (attaching the advertiser's name to the models' images), branding (associating a product with the models' images) and coupon/third party usage (using the models' images to prompt special deals). Id. ¶¶ 24-30.

Chamberlain first determined the fair market value for each model, based on their individual day rates and the specific usages of their images, and multiplied that value by the number of images defendants used of each plaintiff. Chamberlain then multiplied that value by the number of years the images were used. For plaintiff Lucy Pinder, for example, total damages of $80,000 are found by multiplying her day rate, $10,000 by the number of images, 2, by the number of usages, 2, to reach

$40,000.  Because the images were used for two years,
Chamberlain determined Pinder's total damages to be $80,000.

The Court credits the methodology used to calculate damages
as set for in Chamberlains report but is skeptical of the base
day rates.  The Court finds the appropriate day rates for each
plaintiff to be one-half of the values submitted by plaintiffs'
proffered expert, and therefore calculates plaintiffs' actual
total damages at $158,500.

### 2.    Treble Damages

Plaintiffs have requested treble damages.  Chapter 93A
states that recovery

> shall be in the amount of actual damages; or
> up to three, but not less than two, times such
> amount if the court finds that the use or
> employment of the method of competition or the
> act or practice was a willful or knowing
> violation . . . .

M.G.L. c. 93A, §11.

It is clear from the complaint that defendants willfully
committed the violations.  Accepting as true the well-pled
factual allegations, defendants intentionally altered the images
of each plaintiff to make it appear as though the models
endorsed defendants' night club.  The complaint also makes clear
that none of the plaintiffs were ever contacted by the defendant
to request the use of their images.  It is worth noting that
other sessions of this court have allowed treble damages in

-19-

nearly identical cases. See Cerny, 2022 WL 3566818, at *3-*4. This Court therefore awards plaintiffs treble damages totaling $475,500.

### 3. Injunctive relief

Plaintiffs also request that this Court enjoin defendants from further use of their images to promote their business. Injunctive relief is appropriate where

> (1) the plaintiff has prevailed on the merits, (2) the plaintiff would suffer irreparable injury in the absence of injunctive relief, (3) the harm to the plaintiff would outweigh the harm to the defendants from an injunction, and (4) the injunction would not adversely affect the public interest.

Int'l Forest Prods. LLC v. Willison, No. 19-CV-10780-MPK, 2020 WL 6940125, at *2 (D. Mass. Mar. 6, 2020). Here, plaintiffs have prevailed on the merits of Counts II, VII and VIII and have pled facts sufficient to show they would suffer irreparable harm to their reputations absent relief. There is nothing before the court that would indicate that an injunction would harm the defendants, nor is there any reason to believe such an injunction would adversely affect the public interest. This Court will therefore enjoin the defendants from using the plaintiffs' images in the future to promote their business.

### 4. Attorneys' Fees and Costs

Plaintiffs request attorneys' fees and costs in addition to actual damages. This Court finds that plaintiffs are entitled to

-20-

reasonable attorneys' fees and costs and grants leave for the plaintiffs to submit a motion for reasonable costs and attorneys' fees pursuant to Fed.R.Civ.P. 54(d)(2).

### ORDER

For the foregoing reasons, the Report and Recommendation of Magistrate Judge Donald Cabell (Docket No. 20) is accepted, in part, and rejected, in part, such that the motion of plaintiffs for default judgment (Docket No. 18) is, with respect to Counts II, VII and VIII, **ALLOWED,** but, with respect to Counts I, III, IV, V, VI, IX, X, XI and XII, **DENIED.** Plaintiffs are awarded damages in the amount of $475,500 and shall, on or before October 31, 2025, submit a motion for reasonable costs and attorneys' fees pursuant to Fed.R.Civ.P. 54(d).

**So ordered.**

Nathaniel M. Gorton
Senior United States District Judge

Dated: September 30, 2025